This case asked the court to review and preserve the defendant's right to present a defense at trial and to be able to introduce that defense through the use of experts. Mr. Savanh was charged with the receipt and possession of child pornography, and these types of cases generally require that the defense, if one exists, either challenge that the images either weren't child pornography or that someone else downloaded the images. This case involved a third-party defense that someone else downloaded the images. The defense put the government on notice of that well in advance of trial. Approximately a year before trial, the defense, although it didn't have to, exchanged reports with the government. Months before trial, the defense gave the government notice of one expert, Mr. Cinco. Five months before trial, it gives advance notice of two other experts, Larry Smith and Tammy Lors. There was no problem with those experts. The government didn't object to the notices, didn't object to the qualifications, didn't voice any objections whatsoever until the week before trial. So while preparing for trial, the defense in this case anticipated these experts were going to be able to present the third-party hacking defense and prepared as though that was going to go through without any hitch. By waiting until five days or seven days before trial, five trial days, to present any objection to these defense experts, the government really put both the district court and the defense in a bind. Because at that point, even if there was any validity to the government's challenges, there was no way that Mr. Savant would have had an opportunity to replace those experts if Mr. Savant was going to go forward with this trial. Well, can you help me with just what the error of the district court made here? Sure. I can understand your argument that you were hurt by the government. Absolutely. Let's start with Mr. Smith. Mr. Smith, the district court denied the government's request that he be excluded before trial. So the government, or the defense, opened up saying that was one of the experts that was going to be presented at trial. And then they ruled in favor, your favor, before trial. Originally. Yeah. And then right before Mr. Smith testified, the government again objected, and the district court changed gears and said, I remember that I was only going to allow him to testify as a fact witness, which didn't occur. There's nothing in the record that supports the district court's claim that it found him to be a fact witness. There's nothing that supports the district court's belief that it had originally called him to be a fact witness. The district court called him a fact witness in front of the jury and limited his testimony to that of fact witness. That's an error. But the original motion was to preclude the testimony entirely. Correct. Well, to allow them to give anything entirely. Right. And then to allow them to be designated as experts and to give any opinion testimony whatsoever. Because, for instance, the government suggested that their testimony would be cumulative to the government's experts. So you say that the district court didn't limit him to a fact witness, but in the ruling on the motion, the court said Smith's testimony is limited to his own examination of the computer at issue. Correct. So it was quite limited already. He couldn't just speak generally about all computers in the world. Correct. So how is that not limiting him? It wasn't the exact words, limit to a fact witness, but why is it not the same effect? Because one of the things that Mr. Smith was going to say, and the defense had kind of set up a story, Mr. Smith was going to say, these are the things that led me to send it to Sinkle. And one of those things was I found a test, hidden test user account that indicated to me that this was likely a computer that was subject to being remotely hacked. I don't have those skills, but this is why I sent it to Sinkle, whereas the government at trial. Okay. So if Smith was going to rely on Sinkle and if it was proper for the district court to decide that Sinkle is not an expert, then where's the harm here or the prejudice? How is this ultimately an error? Twofold. Mr. Smith was able to say, based on his expert credentials, that these are the things that indicated to me that required additional expertise, whereas the government at trial said the only reason Mr. — well, the only reason Mr. Smith referred it for Sinkle was because Mr. Smith talked to Mr. Savant. And it was his conversation with Mr. Savant that led to additional testing, where it was Mr. Smith's own evaluation of the computer that led him to believe that he needed to send it for additional testing. From his review of the computer — And he was able to say that at trial, wasn't he? He was not. He was not able to say that it was likely, and I'll find the exact words, that it was — there was a likelihood that this was a hacked computer, making it less probable that it was — Well, that's different than — I mean, he could have just said, I had questions, so I needed to get an expert, right? Well, it is — he was able to say he suspected, but it's very different to say I suspected a hood — suspected versus there was a likelihood coming from an expert whom the defense had already promised the jury that this was going to come from the voice of an expert. Can I move to Mr. Sinko? I'll stay with Mr. Smith. I mean, I would recommend that you move to the issue of the obstruction of justice. That's the one that I think you have the best argument on, frankly, but I don't know if my colleagues agree. So you should use your time the way you think. But this does not seem fruitful in my view, because it doesn't seem like these people were experts. Well, I can't leave it with that, Your Honor, because then I have not done my job. If I have not convinced this Court that a defendant who is properly noticed as experts and put the Court on notice of a third-party defense, and this Court has recognized that a defendant has a right to do that, and it doesn't find that someone like Mr. Sinko has 12 years of hands-on experience, cannot present that to a district court and a jury, then there is no hope for any computer case to go with an expert. Can you tell me where do you think that this 12 years of experience, he was an intern and he says he only examined a few computers? I disagree, Your Honor. I disagree, and that's exactly what the district court failed to find. Can I ask a question, please? Yes. What was the government made aware of the qualifications of these so-called experts? Mr. Sinko's expertise was noticed in October of 2015 when he was vordeered during trial because the government never previously asked for a Daubert hearing. That is when Mr. Sinko's additional information came out. Now, the fact that he had prior jobs, such as an exterminator or whatever, has nothing to do with the fact that he was also very well qualified to be an ethical hacker, that he had all these other certifications that the government doesn't dispute. The fact that he did not provide that information on his resume is neither here nor there. He can still be a qualified expert with regard to computers and have a million other jobs, and it doesn't take away from his expertise. The government's discussion at trial regarding his resume was very well explained by Mr. Sinko, and he stated that there is an online resume that he put on the Internet when he was searching for an internship because he had to provide a resume to seek out an internship position because in Nevada you have to have an internship at which you practice under someone else so that you can get your forensic investigative license. And the only way that you can get that licensure is to work for two years in an internship position. So he put that using a web crawler where you put in certain information. The fact that he didn't hold himself out as an expert on an online resume so that he can get a licensure had nothing to do with the fact that he had these certifications. And the fact that the district court ran through and made that its primary focus is very troubling to me. And I apologize that my voice is getting very impassioned, but if this gentleman doesn't provide the qualifications, then I don't know who will. Can I ask you a different question now? Did you ask for a continuance to seek persons that would qualify as experts? We did not, Your Honor, because when we began trial, we began with the notion that the district court had already allowed Mr. Sinko and Mr. Smith to testify as experts. Well, but you say you were surprised by the change in ruling, and you did not make an attempt to seek a continuance to allow you to fill in that gap? Correct, Your Honor, because the district court changed its rulings in the middle of trial, except for Ms. Lors. So even though the district court did not allow Ms. Lors to testify in the beginning of trial, by the time we began trial, he had already held that Smith and Sinko could testify. Okay. So that goes back to my original question of where the error was. You are saying that there was no error when there was a limiting of what the witnesses could testify to before trial, but there was error when the court changed its mind during trial? We could — it looked as if they could live with what was limited to with Smith because of the ruling with regard to Sinko, if I'm giving a fair reading of the record. But when Sinko was precluded entirely from being able to say the things he would say, which was I could do the very keystrokes that Troy Kelly said were not possible, which would have demonstrated a remote user could have done what Kelly, the government's expert Troy Kelly said could not be done, and that a remote user could, yes, very well have put those images without sitting at the computer, which Troy Kelly said could not be done. And that's the exact third-party hacker defense that the defense put the government on notice of. And maybe the defense committed a mistake by putting the government on notice early, but they were trying to do everything correctly. And they put the government on notice early, and they filed their notices early, and they gave reports when they weren't supposed — didn't need to give reports. And they did all the things that they were supposed to do. And the district court read into 702 things that didn't need to be there. And if there were difficulties that the district court had with community colleges or publishing online, then that's a question for the jury. 702 is a rule of inclusion. So the district court erred in excluding Cinco at the very least. If it was an error, would it be harmless if we think the confession should have been admitted? No, because Cinco bolstered Mr. Savant's statements. If you think the statement should have come in, Mr. Savant's testimony at trial makes all the more sense when you have Mr. Cinco's expert testimony. Do you want to save a minute for rebuttal? Yes, thank you. Can I ask one more question? As I take it, you're saying that your witnesses, your experts, were in fact qualified, and that the judge made an error in excluding them? Yes, Your Honor. And this was apparent from the record? Yes, Your Honor. Well, I don't understand why, if it was so apparent, you would have been prejudiced by the government raising this question at the time of the trial. I don't understand the question, Your Honor. Well, I'll withdraw it. Good morning, Your Honors. Nancy Olson, appearing on behalf of the government. May it please the Court, I'd like to briefly address a couple of points that were raised with regard to Smith and Cinco, and then I'm going to turn to Judge Friedland's question about obstruction of justice. With regard to the proposed expert, Smith, the record makes it clear there was no change in the record. I'll direct the Court to page 54 of the record. That was the written order. There's a stark difference between the ruling in that order on Cinco, which goes heavily into Rule 702, talks about expert qualifications, and we see that's a ruling on an expert witness. But then when the Court turned to Smith, it was very different, as the panel already pointed out. That was based on his own personal knowledge, and it was made clear. And then when Savant raised the issue again at trial, to clarify, the Court said, no, as I recall, here's what the order is that I issued. He was going to testify as a fact witness, own knowledge. The Court then had his clerk go get a copy of that order. He re-read it into the record and said, yes, this is the order. So there was no change there. That's a misunderstanding of the record. With regard to Mr. Cinco, the district court's issue was not that he had a community college degree or that he had this resume online. The issue was that he got on this stand and he admitted that he had basically no experience. He did not get on the stand and say he had 12 years of experience. He said, that's true. I only examined a handful of computers. I only worked as an intern for a little while. And I would like to talk about the notice issues with respect to Mr. Cinco, because there's something important here that was left out. If you compare a motion that the Court filed or, I'm sorry, that the government filed in November of 2015, this is at 1741 in the record, it explicitly challenged Cinco for the very same reasons. Cinco submitted this supplemental expert report on the eve of trial at an earlier trial setting, and the government filed an emergency motion saying, we just got this new report dumped on us. It's suspect as to his qualifications and his opinions that he's giving. We want a Daubert hearing. And the whole reason this got pushed the way that it did was because of Mr. Savant's response. He specifically said, it's okay, we can sort it out in voir dire, and that's exactly what happened. So the fact that he feels that he was surprised by what happened in voir dire and that this online resume was presented and so forth, that was all by his own doing because this is exactly what he asked for it to be done at the end. I just want to turn to the obstruction of justice issue, unless the panel has any questions about the experts. The Court in this case made the explicit findings that this Court requires. Those are at page 74 and 75. The Court said this was, quote, false testimony under oath concerning material matter, and he found that it was with willful intent to deceive rather than confuse the public. And this was building upon the Court's earlier findings at page 69 where he was talking about the facts of the trial. He said, I don't think the jury didn't believe Mr. Savant. He claimed he got on the stand and he claimed there was no downloading. He didn't download, but in fact the jury found otherwise, and he found that this was to deceive the jury. So if you read those two portions of the record together, the district court made the explicit findings that are required by this Court. But the later part that you actually read first is necessary, and it comes in a discussion about lying to Detective Nichols. So it's at least a little confusing what was going on at that point in the hearing. Can you speak to why it came up in the context of this Detective Nichols statement? Yes, Your Honor. So the government attempted to get the Court to make this finding on two different bases, and so it brings it up and says, Your Honor, what about this other reason? Are you finding it because of that, too? And basically the Court says no, because what he says is, I find that your testimony under oath. So that can only mean that he was referring to the trial testimony, because when he took the stand at trial, he was clearly under oath, whereas when he was having a conversation in the back of a car, he's not under oath. He was just having a discussion. And so the Court's findings can only be as to the trial testimony rather than this alternative argument. The government did raise the trial court, but we're not standing by that now. It was something that I think that the trial attorneys were saying, well, maybe we can get this finding on two grounds. And the district court said, no, you can have it on the ground of his under oath testimony only. He doesn't actually, or she, I don't remember who's the judge, but he didn't say no. I mean, it would be good if he said no. He instead kind of talks about, yes, he did lie to Detective Nichols and then goes right into this next statement. So it's not, I don't think it's as clear as a no would have made it. Your Honor, I think that if he hadn't said the words under oath, I think that we would have gotten this, and it would say, well, what was he really talking about? But once he inserts the words under oath, he could only be talking about the trial testimony. And so I think he was kind of considering what the government was saying, but he really, he went back to what he said at page 69, which was what Savant said on the stand. The jury disbelieved him, and he thinks that the purpose of that testimony was to deceive the jury. So I agree that the order is, it spread out a little bit because there was some intervening discussion at sentencing, and then it was the government seeking an alternative ruling. But since we have those words under oath, I think we can put those two pages together and understand that what the district court was finding was only about that trial testimony and nothing else. Those are the three main areas that I believe that the Court raised questions about in Mr. Savant's argument. I'm prepared to submit on the briefs unless the Court has any other questions. I actually do have one more question. If we think that the transcript isn't clear, then how would you read Herrera Rivera about whether any error in this regard is necessarily plain error? So I think that the key words there are any error. So I don't think saying that it's less clear than the Court would like or maybe because he talked about it, there was some intervening discussion, and then he talked about it again. I don't think that's error. What it is is you have to discern what he meant by under oath testimony, and you have to say, could that have arguably been the speaking to the detective or could that have only been trial? And since we know here it was under oath, it could only have been trial. I think even though there might be a little ambiguity that requires you to look at different parts of the record and understand what he meant, once you do that, then there is no error, and so remand wouldn't be necessary for that reason. Thank you. Thank you, Counsel. Can I please just clarify one thing with regard to the government's representation about Mr. Cinco? When we provided Mr. Cinco's report, when we provided the supplemental report, all that was was a video, visual representation of the paper report. So when the government moved to continue trial and said, we may need a Daubert report, it is not as the government said, and we corrected this in our reply brief on page 14, the government said we may need a Daubert hearing to explore Mr. Cinco. The government never requested it, and both the government and I misrepresented what was actually requested below. So even though the government might have thought about doing something about it. But didn't you say we can deal with this at voir dire? Correct. So at that point, how can you complain that it didn't get resolved until trial? I'm not complaining. What I'm saying is when the issue is that the government didn't do anything more about that, that was when we had a November trial date. Nothing then happened until May. We were trying to contest having a push of the November trial date. But once you said we can deal with this at voir dire, then can't you expect it will be resolved at voir dire at trial? Whenever trial happens? If we would have kept the November trial date. But did you say it should only be resolved at voir dire if we keep this trial date? I don't understand that. Once you say it's going to be resolved during trial, then why shouldn't everyone think it will be resolved during trial whenever trial is? No, Your Honor. Well, the whole point of that was so that we could keep the November trial date because the government kept pushing the trial date. Well, that might have been what was in your head. But once you said we'll resolve this issue of Sinko's expertise in voir dire during trial. Okay, fine. Let's accept that. The point doesn't change that he is still qualified. So for to not do anything about it until five days and for us to believe that he is qualified to not be able to present a single defense on the third-party hacker left Mr. Savant with absolutely nothing walking into trial. I'll ask my question again this time. If you say he was qualified, what difference does it make that the government brought it up at a later date? If he was qualified, he would have been qualified before or after in any event. Well, it makes a difference because if the district court allows the defense to present to the jury that we're going to present these witnesses and we promise the jury that we're going to present these witnesses and we don't, not only is the defendant prejudiced, they've lost all trust in what we're doing for Mr. Savant. And he shouldn't be prejudiced because of whatever the defense attorneys might have done, might not have done. He shouldn't be prejudiced because of rulings the district court took against us for mid-trial rulings. We tried to do what we were supposed to do. Mid-trial rulings set aside, this shouldn't have been taken against Mr. Savant. I don't know what more they could have done. At the very least, I would ask the court to consider granting Mr. Savant a new trial so that he can present a defense that he had put the government on notice of a year before his trial in this case. Thank you. Thank you, counsel. The case is submitted and we are adjourned for the day.
judges: Torruella, Schroeder, Friedland